UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANNETTE BRANCHE,
    Plaintiff

v.     :    CIVIL NO. 1:11-CV-468

WELLS FARGO MORTGAGE
COMPANY, *et al.*,
    Defendants

*M E M O R A N D U M*

*I.    Introduction*

Before the Court are motions for summary judgment filed by Defendant Wells Fargo (Doc. 103), and Plaintiff Annette Branche (Doc. 118). Plaintiff filed this action on March 11, 2011. All defendants except Wells Fargo have been dismissed. On August 16, 2012, we granted summary judgment in favor of Wells Fargo on two of Plaintiff's four claims. (See Doc. 79). Plaintiff's remaining claims are for breach of contract (Count I), and an alleged violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III). Defendant moves for summary judgment on both claims, arguing that Plaintiff lacks standing to bring them, or, alternatively, that the claims fail on the merits. Plaintiff also moves for summary judgment, arguing that no dispute of material fact remains, and that she should succeed on both claims.

*II.     Background*

Plaintiff Annette Branche resides at a property in Harrisburg, Pennsylvania, that she inherited from Charles C. White in 2000. Plaintiff has served as the administrator of Mr. White's estate (hereinafter "Estate") since his death. Defendant Wells Fargo services the mortgage on the property, which was originally in Mr. White's name, and is now in the name of the Estate. Plaintiff makes the monthly payments.

In 2006, Plaintiff hired C&G Contractors ("C&G") to renovate the house for a catering business. After becoming dissatisfied with its work, and upon learning that it was not a licensed contractor, Plaintiff fired C&G. By this time, C&G had caused considerable damage to the home. Plaintiff sued C&G in county court and was awarded $2,367.80, representing the money she had paid them. Approximately six to eight months after the damage occurred, Plaintiff filed a homeowner's insurance claim for vandalism on an American Security Insurance Company policy owned by the Estate. In October 2008, following several rounds of estimates, American Security offered $24,665 to repair the damage. From this amount, American Security subtracted $4,913 for depreciation, $500 for the policy deductible, $2,367.50 for Plaintiff's county court award, and $27.50 for a prior payment. As the named mortgagee on the insurance policy, Defendant Wells Fargo was entitled to oversee the repairs and disburse funds. Consequently, a check in the amount of $16,756.92 was sent to Wells Fargo and placed

in an escrow account.[1]  Later, American Security adjusted the claim upward, and an additional $2,765 was sent to Wells Fargo.

On December 3, 2008, Defendant Wells Fargo sent the Estate a letter, care of Plaintiff, outlining the options for disbursing the funds.  Plaintiff chose the option of selecting a contractor to complete the repairs, with payments to be issued according to Wells Fargo's guidelines.  Defendant's letter explained that the funds would be released in "1/3 increments to cover the cost of the repairs as they are completed." (Doc. 111, Exhibit H).  The first one-third of the funds would be released after Wells Fargo received an estimate and proof the contractor was licensed, among other items.  The second one-third would be released after an inspection ordered by Wells Fargo certified that the repairs were 50% complete.  The final one-third would be released once an inspection showed the repairs were 100% complete.  (Doc. 111, Exhibit H).

Plaintiff selected Markle Home Improvements ("Markle") as the contractor.  Markle's written estimate was for $29,800–approximately $10,000 in excess of the insurance funds available at the time.  Plaintiff signed a contract with Markle on December 16, 2008.  While Plaintiff told Markle that the funds were coming from an insurance policy, Plaintiff did not explain the three-step disbursement process.  Plaintiff completed the steps to obtain the first release of funds on December 11, 2008, and

---

1. Plaintiff contests this fact, and disagrees with the claim amount because she believes the court award was "improperly deducted because it belongs to Plaintiff." (Doc. 116, ¶ 68).  However, Plaintiff acknowledged in her deposition that she understood that American Security, and not Wells Fargo, decided to deduct the court payment from the funds.

3

Wells Fargo paid the first disbursement, in the amount of $6,497.30, on December 17, 2008.[2] The second disbursement, in the amount of $6,497.31, was released on January 9, 2009.[3]

On January 27, 2009, American Security again adjusted the claim upward by $4,500 for additional plumbing and electrical work. On April 3, 2009, Plaintiff contracted with Gettle Electric to perform this work, at an estimated cost of $6,200.

Markle became dissatisfied with the timing of its payments, and stopped work on the property. Plaintiff then selected Bero Remodeling ("Bero") to complete the project. Plaintiff contracted with Bero on or about July 13, 2009, for an estimated cost of $18,200. (Doc. 111, Exhibit O). On March 22, 2010, Wells Fargo released a disbursement in the amount of $10,740, at least $9,000 of which was paid to Bero.[4] On

---

2. Defendant's Exhibit K contains a typographical error regarding the date of the first disbursement. Exhibit K states that the first disbursement was made on December 17, *2007*, while Defendant's statement of facts states that it was made on the same date in *2008.* (Doc. 111, ¶ 107). Plaintiff takes issue with this discrepancy. However, since the record demonstrates, and Plaintiff agrees, that she received the letter outlining the three-step process for disbursement on December 3, 2008, it is only logical that the actual date the disbursements began was December 17, 2008. Given that Plaintiff accepted these dates as correct during her deposition, and offers no evidence to the contrary, the Court accepts this fact as undisputed.

3. Similarly, Exhibit K states that the second disbursement was made January 9, *2008*, while Defendant's statement of facts states it was made the same day in *2009.* However, Doc. 111, Exhibit L shows that the repairs were certified as 50% complete on January 8, 2009. Therefore, the date of the second disbursement must be January 9, 2009.

4. The parties dispute whether the remaining $1,740 was retained by Plaintiff, or whether she used it to purchase materials.

4

May 13, 2010, the property was inspected and the repairs were determined to be 95% complete. On May 19, 2010, Plaintiff signed a Certificate of Completion, certifying that the repairs were 100% complete. Wells Fargo released the final disbursement of $5,197.89 on May 26, 2010, which was paid to Bero. In total, Wells Fargo released approximately $29,000 to Plaintiff and her contractors. Plaintiff currently owes Bero $5,542.11. (Doc. 111, Exhibit P).

On March 11, 2011, Plaintiff filed this suit against Markle Home Improvement, Gettle Electric, Bero Remodeling, American Security Insurance Company, and Wells Fargo. The only remaining claims are against Wells Fargo for breach of contract and deceptive trade practices. Plaintiff claims that Wells Fargo breached its promises in the December 3, 2008 letter by failing to provide timely payment to Plaintiff's contractors. She also claims that Wells Fargo violated an "implied contractual obligation" to permit plaintiff to safely occupy the premises of her house (Doc. 119 at 6), and that it violated the duty of good faith. Last, Plaintiff claims that Wells Fargo engaged in "deceptive and misleading actions, misrepresentations and fraudulent behavior." (Doc. 119 at 11). Both parties now move for summary judgment.

III.     *Discussion*

   *A. Standard of Review*

We will examine the motion for summary judgment under the well-established standard. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d. Cir. 2008) ("Summary judgment is only appropriate if there are no genuine issues of material

5

fact."). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find for the non-movant." Id. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

*B. Breach of Contract Claim*

Defendant Wells Fargo argues that Plaintiff lacks standing to raise a breach of contract claim. (Doc. 112 at 11-14). We find it unnecessary to decide this issue. Even if Plaintiff had standing, we conclude that Defendant would be entitled to summary judgment on Count I.

Plaintiff raises three arguments to support her breach of contract claim. First, Plaintiff alleges that Defendant breached the promises of the December 3, 2008 letter. Specifically, Plaintiff argues that Defendant "refused or failed to timely disburse to Markle funds to which it was entitled . . ." and that "Markle is owed approximately $2,500 for work performed on the property which Wells Fargo has failed to disburse . . . ." (Doc. 119 at 4). Under Pennsylvania law, a Plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 224 (3d Cir. 2003) (internal quotations omitted). Reviewing the facts of this case, it is clear that Wells Fargo

6

fulfilled its promises.  Wells Fargo made four disbursements of insurance funds to Plaintiff and her contractors over approximately two-and-a-half years.  As promised, one-third of the funds were disbursed after Wells Fargo received the required initial forms, and another one-third was released after the repairs were inspected and certified as 50% complete.  (Doc. 111, Exhibit K).  Additional funds, in excess of $10,000, were released in March of 2010.  Finally, after the repairs were certified as 100% complete, the final disbursement was made in May of 2010.  Plaintiff insists that the timing of Defendant's disbursements did not suit her contractor, Markle, yet Plaintiff admitted in her testimony that she never informed Markle of the three-step payment process.  Defendant was not obliged to release funds as desired by Plaintiff's contractors.  Rather, it was Plaintiff's responsibility to ensure that her contractors understood and agreed to the payment plan set out by Defendant in the December 3, 2008 letter.  It is undisputed that Plaintiff failed to do so.  Moreover, we note that Plaintiff repeatedly engaged contractors whose estimates exceeded the available insurance funds.  Defendant never promised to pay Plaintiff in excess of the funds made available by American Security.  Thus, Defendant has not breached any promise it made in the December letter.

Second, Plaintiff claims that Wells Fargo breached its obligation under the mortgage contract to "insure [sic] that Plaintiff safely occupied the premises." (Doc. 119 at 6). Plaintiff contends while this promise is not explicit in the mortgage contract, it is "an implied contractual obligation . . . which is analogous to an implied warranty of habitability as applied in the context of landlord-tenant law." (Id.)  Defendant argues in

response that Pennsylvania law imposes no such duty upon mortgagees or mortgage servicers. Plaintiff offers no case law to support this argument, and this Court has found none. Thus, we agree with Defendant and find that no such obligation exists under the law.

Third, Plaintiff contends that Defendant breached its duty of good faith by "withholding funds and not conducting timely inspections of the repairs." (Doc. 119 at 11). An implied duty of good faith and fair dealing is implicit in every contract. See Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). "The duty of 'good faith' has been defined as '[h]onesty in fact in the conduct or transaction concerned.'" Id. Defendant argues that it complied with Plaintiff's reasonable expectations when disbursing the insurance proceeds. We agree. Plaintiff testified at her deposition that she understood the three steps of the disbursement process, and it is clear from the record that Defendant completed those steps as promised. Plaintiff's argument on this point is not supported by the record.

Having reviewed Plaintiff's arguments, and finding no dispute of material fact exists on the breach of contract claim, we will grant summary judgment for Defendant on Count I.

*C. Standing on Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) Claim*

Defendant argues that it is entitled to summary judgment on Count III because Plaintiff lacks standing to sue under the UTPCPL. The UTPCPL provides a

cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property" as a result of deceptive trade practices. 73 Pa. C.S. § 201-9.2(a). Defendant contends that because Plaintiff is not a purchaser or lessor of goods, she may not bring a claim under the UTPCPL.

Ordinarily, "[a] plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct." Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 547 (E.D. Pa. 2012) (citing Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 56 (3d Cir. 1992)). Standing may exist for plaintiffs who were not in privity but who were "specifically intended to rely upon the fraudulent conduct[ ] and those whose reasonable reliance was specifically foreseeable." Id. at 547-48. However, the Third Circuit has explained that a plaintiff "lacking any commercial dealings with the defendant" will not have a cause of action under the statute. Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 57 (3d Cir. 1992). For example, in Morgan v. World Alliance Fin. Corp., No. 12-4617, 2013 WL 373270 (E.D. Pa. Jan. 31, 2013), the plaintiff turned over his ownership interest in a home to his mother so that she could obtain a reverse mortgage. See Morgan, 2013 WL 373270, at *4. When the plaintiff sued for deceptive trade practices, the Third Circuit reasoned that although he was not "named as a borrower in the Mortgage itself . . . he was an integral part of the resulting mortgage transaction insofar as he was required to give up something of significant value in order to consummate the transaction." Id. at *5. Accordingly, the court found that he had standing to sue under the UTPCPL. Id.

9

Unlike the plaintiff in Morgan, Plaintiff Branche has not engaged in "commercial dealings" with Defendant that required her to "give up something of significant value in order to consummate the transaction." Id. Although Plaintiff asserts otherwise, the record is clear that Plaintiff never purchased mortgage services from Defendant. The mortgage, which was executed in March of 1998, lists Charles C. White as the borrower (Doc. 111, Exhibit C), and Plaintiff confirmed in her deposition that she never obtained a mortgage from Wells Fargo. (Doc. 111, Exhibit B at 84). Similarly, the letter dated December 3, 2008, is not representative of a commercial transaction. (Doc. 68, Exhibit 2). It does not describe an exchange of promises in return for goods or services, but outlines the process for disbursement of insurance proceeds. As observed by the Third Circuit, "[t]he CPL contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase." Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994). Considering the above, we find that Plaintiff lacks standing to sue under the UTPCPL, and Defendant is entitled to summary judgment on Count III.

*IV.  Conclusion*

For the foregoing reasons, we find that Defendant is entitled to summary judgment on Counts I and III. Accordingly, Plaintiff's motion for summary judgment will be denied. We will issue an appropriate order.

/s/William W. Caldwell
United States District Judge

10